MUNGER, TOLLES & OLSON LLP
  Marc T.G. Dworsky (SB# 157413)
  James C. Rutten (SB# 201791)
  Daniel R. McCarthy (SB# 255732)
355 South Grand Avenue, 35th Floor
Los Angeles, California  90071-1560
(213) 683-9100; (213) 687-3702 (fax)
marc.dworsky@mto.com
james.rutten@mto.com
daniel.mccarthy@mto.com

MUNGER, TOLLES & OLSON LLP
  David H. Fry (SB# 189276)
  Carolyn V. Zabrycki (SB# 263541)
560 Mission Street, 27th floor
San Francisco, California  94105-2907
(415) 512-4000; (415) 512-4077 (fax)
david.fry@mto.com
carolyn.zabrycki@mto.com

Attorneys for Defendants WELLS FARGO BANK, N.A. and WELLS FARGO ASSET SECURITIES CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

| | |
|---|---|
| THE CHARLES SCHWAB CORPORATION,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>BNP PARIBAS SECURITIES CORP. *et al*.<br><br>　　　　　Defendants. | CASE NO. CV-10-4030-SI<br><br>**WELLS FARGO DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO REMAND**<br><br>[Declaration of James C. Rutten filed concurrently herewith]<br><br>Date:　　　February 25, 2011<br>Time:　　　9:00 a.m.<br>Courtroom:　10 |

OPPOSITION TO MOTION TO REMAND
CASE NO. CV-10-4030-SI

**TABLE OF CONTENTS**

I. INTRODUCTION ............................................................................................................. 1

II. BACKGROUND ............................................................................................................... 2

    A. Plaintiff's Filing Of Cookie-Cutter Complaints Against Dozens Of Unrelated Defendants ................................................................................................ 2

    B. Wells Fargo's Indemnity Rights Against American Home ..................................... 4

III. ANALYSIS ........................................................................................................................ 5

    A. The Court Has Bankruptcy "Related To" Jurisdiction Over This Action ............... 5

        1. This Action Satisfies the Standard for Bankruptcy "Related To" Jurisdiction ................................................................................................... 5

        2. Plaintiff's Post-Removal Attempt to Excise American Home Loans From This Case Does Not Affect the Court's Jurisdiction ......................... 9

        3. Section 22(a) of the Securities Act of 1933 Does Not Affect Bankruptcy "Related To" Jurisdiction ....................................................... 10

    B. The Equities Favor Exercising Jurisdiction .......................................................... 12

IV. CONCLUSION ................................................................................................................ 13

# TABLE OF AUTHORITIES

**CASES**

*Belcufine v. Aloe*,
  112 F.3d 633 (3d Cir. 1997) ............................................................................................ 8

*Tennessee Consolidated Retirement System v. Citigroup, Inc.*,
  2003 WL 22190841 (M.D. Tenn. May 9, 2003) ........................................................... 11

*CalPERS v. WorldCom, Inc.*,
  368 F.3d 86 (2d Cir. 2004) .................................................................................. 2, 10, 11

*Carpenters Pension Trust. v. Ebbers*,
  299 B.R. 610 (C.D. Cal. 2003) .............................................................................. 1, 6, 9, 11

*Celotex Corp. v. Edwards*,
  514 U.S. 300 (1995) ..................................................................................................... 10

*City of Ann Arbor Employees' Retirement Sys. v. Citigroup Mtg. Loan Trust Inc.*,
  572 F. Supp. 2d 314 (E.D.N.Y. 2008) .......................................................................... 8

*City of Birmingham Retirement & Relief Fund v. Citigroup, Inc.*,
  2003 WL 22697225 (N.D. Ala. Aug. 12, 2003) ........................................................... 11

*FHLB v. Barclays Capital, Inc.*,
  2010 WL 3662345 (W.D. Wash. Sep. 1, 2010) ............................................................. 8

*FHLB v. Deutsche Bank Sec.*,
  2010 WL 3512503 (W.D. Wash. Sep. 1, 2010) ........................................................... 8, 9

*FHLB v. Deutsche Bank Sec.*,
  2010 WL 5394742 (N.D. Cal. Dec. 20, 2010) ............................................................. 9, 12

*Hendricks v. Detroit Diesel Corp.*,
  2009 WL 4282812 (N.D. Cal. Nov. 25, 2009) ............................................................. 6, 7

*In re Bissonnet Invs. LLC*,
  320 F.3d 520 (5th Cir. 2003) .......................................................................................... 9

*In re Dow Corning Corp.*,
  86 F.3d 482 (6th Cir. 1996) ............................................................................................ 6

*In re Federal-Mogul Global, Inc.*,
  300 F.3d 368 (3d Cir. 2002) .......................................................................................... 8

*In re Fietz*,
  852 F.2d 455 (9th Cir. 1988) .................................................................................. 1, 5, 6, 7

ii                                    OPPOSITION TO MOTION TO REMAND
                                           CASE NO. 10-04030 (SI)

*In re Sizzler Restaurant Int'l, Inc.*,
   262 B.R. 811 (C.D. Cal. 2001) ................................................................................................. 6, 7

*In re Washington Mut., Inc. Sec., Derivative & ERISA Litig.*,
   2009 WL 3711614 (W.D. Wash. 2009) ................................................................................ 6, 7, 12

*Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*,
   594 F.3d 383 (5th Cir. 2010) ................................................................................................... 8, 11

*Luther v. Countrywide Home Loans Servicing LP*,
   533 F.3d 1031 (9th Cir. 2008) ..................................................................................................... 12

*Massachusetts Bricklayers & Masons Trust Funds v. Deutsche Alt-A Sec., Inc.*,
   399 B.R. 119 (E.D.N.Y. 2009) ....................................................................................................... 8

*Pacific Life Ins. Co. v. J.P. Morgan Chase & Co.*,
   2003 WL 22025158 (C.D. Cal. June 30, 2003) ..................................................................... 6, 7, 11

*Pacor, Inc. v. Higgins*,
   743 F.2d 984 (3d Cir. 1984) ........................................................................................................... 8

*Senorx, Inc. v. Coudert Bros. LLP*,
   2007 WL 1520966 (N.D. Cal. May 24, 2007) ................................................................................ 6

*Sparta Surgical Corp. v. NASD*,
   159 F.3d 1209 (9th Cir. 1998) ........................................................................................................ 9

*Steel Workers Pension Trust v. Citigroup, Inc.*,
   295 B.R. 747 (E.D. Pa. 2003) ........................................................................................................ 8

*Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*,
   2010 WL 5559973 (C.D. Cal. Dec. 29, 2010) ........................................................................ *passim*

*Things Remembered, Inc. v. Petrarca*,
   516 U.S. 124 (1995) ....................................................................................................................... 5

*Williams v. Shell Oil Co.*,
   169 B.R. 684 (S.D. Cal. 1994) ....................................................................................................... 6

**STATUTES AND RULES**

Section 22(a) of the Securities Act of 1933 (15 U.S.C. § 77v(a)) .............................. 2, 10, 11, 12

28 U.S.C. § 157 .............................................................................................................................. 13

28 U.S.C. § 1334 .......................................................................................................................... 1, 5

28 U.S.C. § 1452 ............................................................................................................................... 1

Fed. R. Civ. P. 38(a) ...................................................................................................................... 13

## I. INTRODUCTION

A lawsuit is subject to federal removal jurisdiction if it is related to a federal bankruptcy proceeding. *See* 28 U.S.C. §§ 1334(b), 1452. A lawsuit is related to a bankruptcy proceeding if "a defendant[] [has a] claim for contractual indemnity against an entity in bankruptcy," *Carpenters Pension Trust. v. Ebbers*, 299 B.R. 610, 613 (C.D. Cal. 2003), because such a claim "could conceivably have an[] effect on the estate being administered in bankruptcy." *In re Fietz*, 852 F.2d 455, 457 (9th Cir. 1988). This lawsuit is subject to the Court's removal jurisdiction for these reasons.

Defendant Wells Fargo Bank, N.A. acquired loans underlying some of the Wells Fargo mortgage-backed pass-through certificates at issue in this case from American Home Mortgage Company ("American Home"), which is in bankruptcy. Wells Fargo has contractual indemnity rights against American Home for claims brought against Wells Fargo based on mortgage underwriting guidelines or origination practices – precisely the claims Plaintiff brings here. Wells Fargo's indemnity rights include the right to have American Home pay, in the first instance, Wells Fargo's attorneys' fees incurred in this action. Accordingly, Wells Fargo has submitted a proof of claim in the *American Home* bankruptcy proceeding, and Wells Fargo's indemnity claim will be resolved in that proceeding. "There is therefore no merit to Plaintiff's argument that yet another separate lawsuit would have to proceed – in which [Wells Fargo] gets a judgment regarding American Home's indemnification liability – before the bankruptcy case would be impacted." *Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 2010 WL 5559973, at *4 (C.D. Cal. Dec. 29, 2010) (finding "related to" jurisdiction over a mortgage-backed securities case based on the defendants' contractual indemnity rights against American Home). Plainly, Wells Fargo's indemnification rights against American Home give rise to bankruptcy "related to" jurisdiction.

Plaintiff's post-removal attempt to excise the American Home loans from its Amended Complaint – claiming that it has no intention of litigating over those particular loans – fails both legally and factually. Plaintiff's attempt fails legally because this Court must determine removal jurisdiction based on the case as it existed at the time of the removal, and the Amended

Complaint contains blanket allegations against *all* originators and *all* mortgage loans in the loan pool at issue. Plaintiff's attempt fails factually because its promise to ignore hundreds of American Home loans cannot be aligned with its allegations regarding the entire loan pool, including its allegations regarding credit ratings (ratings based on *all* the loans in the pool); its allegations regarding aggregate loan-to-value percentages (percentages based on *all* the loans in the pool); and its allegations regarding statistics generated by Plaintiff (statistics generated by examining *all* the loans in the pool). (*See* Am. Compl. ¶ 125 & Schedule 26 (Items 66, 76, 79, 110, and 120).) Plaintiff's promise not to litigate about the American Home loans does not change the fact that jurisdiction exists.

Plaintiff, unable credibly to dispute that this action is "related to" the *American Home* bankruptcy case, falls back to arguing that § 22(a) of the Securities Act of 1933 (the "1933 Act") prohibits removal of 1933 Act claims even when they are related to a federal bankruptcy case. Plaintiff's argument fails. Courts in the Ninth Circuit that have addressed this issue, as well as the Second Circuit, hold that § 22(a) does not negate "related to" jurisdiction; indeed, "[w]ere Section 22(a) construed to trump ['related to' jurisdiction], Section 22(a) could interfere with the operation of the Bankruptcy Code." *CalPERS v. WorldCom, Inc.*, 368 F.3d 86, 103 (2d Cir. 2004).

Because this Court has "related to" jurisdiction over this matter, Plaintiff's Motion to Remand should be denied.

## II. BACKGROUND

**A.** **Plaintiff's Filing Of Cookie-Cutter Complaints Against Dozens Of Unrelated Defendants.**

Plaintiff did not invest in, and does not own, the mortgage-backed pass-through certificates at issue in this case, and does not stand to benefit from any recovery. Instead, Plaintiff received an assignment of litigation claims from its affiliate that did invest in, and that does own, various mortgage-backed pass-through certificates, and Plaintiff agreed to pay 97% of any litigation recovery to that affiliate. (*See* Am. Compl. Ex. A.) Plaintiff then proceeded to file four related lawsuits in state court (the first on the very day it received this intra-corporate

assignment), and all have now been removed to federal court with remand motions pending. Plaintiff's first-filed lawsuit,[1] which is also brought against Wells Fargo and some of the other Defendants here, is pending before The Honorable Lucy Koh (before whom the omnibus class action *In re Wells Fargo Mortgage-Backed Certificates Litigation* is also pending). Plaintiff's second-filed lawsuit is the instant case. Plaintiff's third- and fourth-filed lawsuits[2] are currently pending before The Honorable Jeffrey White.

Plaintiff's complaints are all the same – nearly verbatim – with the differences between securities offerings, the parties, and so forth recited in lengthy "schedules" to the same stock complaint. Plaintiff indiscriminately lumps together unrelated offerings and defendants into the same complaint, with no discernable reason for including particular offerings and defendants in any given complaint. Plaintiff in the instant case lumps together 36 offerings by 14 unrelated issuers, and makes allegations about loans originated by at least 25 separate lenders.

Plaintiff's stock complaint alleges various flaws in the loans underlying the offerings: that the originators of the loans "departed extensively" from their underwriting guidelines, that the originators used inflated appraisals in opining on the loans' loan-to-value ratios, that the originators failed to detect or to prevent borrower fraud, and so forth. (*See, e.g.*, Am. Compl. ¶¶ 91, 103, 115.) Plaintiff's allegations all center on the originators, whether they be Wells Fargo or other originators of the loans that were included in the loan pools underlying the certificates:

> (a) [T]he *originators* were departing extensively from [their] underwriting standards; (b) the *originators* were making extensive exceptions to those underwriting standards when no compensating factors were present; (c) the *originators* were making wholesale, rather than case-by-case, exceptions to those underwriting standards; (d) the *originators* were making mortgage loans that borrowers could not repay; and (e) the *originators* were failing frequently to follow quality-assurance practices necessary to detect and prevent fraud intended to circumvent their underwriting standards.

(*Id.* ¶ 115 (emphasis added).)

---

[1] *Charles Schwab Corp. v. Banc of Am. Sec. LLC.*, No. CV-10-03489 (N.D. Cal. filed June 29, 2010).

[2] *Charles Schwab Corp. v. J.P. Morgan Sec., Inc.*, No. CV-10-04523 (N.D. Cal. filed Sep. 2, 2010); *Charles Schwab Corp. v. J.P. Morgan Sec., Inc.*, No. CV-10-04522 (N.D. Cal. filed Sep. 2, 2010).

**B.     Wells Fargo's Indemnity Rights Against American Home.**

Wells Fargo has a contractual right of indemnity against American Home, which is in federal bankruptcy proceedings in Delaware. Wells Fargo purchased from American Home 262 of the loans underlying Wells Fargo Mortgage Backed Securities Trust 2007-8,[3] one of the three mortgage-backed securities offerings from Wells Fargo that is at issue in this case. (*See* Decl. of James C. Rutten filed concurrently herewith ("Rutten Decl.") at ¶ 2; Decl. of Jackson Manley attached as Ex. 2 to the Rutten Decl. ("Manley Decl.") at ¶ 3.)[4] Wells Fargo did so pursuant to a Master Mortgage Loan Purchase and Interim Servicing Agreement (*see* Manley Decl. ¶ 3), section 7 of which made representations and warranties to Wells Fargo that American Home had "underwritten, originated and processed [the loans] in accordance with the Underwriting Guidelines;" that the appraisers of the mortgaged properties had not "made any false representation and/or . . . failed to provide information that is true, complete, and accurate"; and that the borrowers' applications do not "contain[] any untrue statement of fact or omit[] to state a fact necessary to make the statements in the [applications] not misleading." (*See id.* Ex. 1 §§ 7.02(1), (10), (36) (pp. 19, 21, 26-27).) Plainly, these representations and warranties are directly implicated by Plaintiff's allegations in this case.

American Home agreed to indemnify Wells Fargo for any breach of American Home's representations and warranties. Its indemnities include commitments not only to pay any judgment Wells Fargo suffers as a result of any such breach, but also a commitment to pay, in real time, all defense costs and attorneys' fees Wells Fargo incurs:

> [T]he Seller [American Home] shall indemnify the Purchaser [Wells Fargo] and hold it harmless against, and shall pay on behalf of the Purchaser *in the first instance*, any and all claims, losses, liabilities, demands, damages, penalties, fines, forfeitures, reasonable and necessary legal fees and related costs, judgments and other costs and expenses resulting from any claim, demand, defense or assertion

---

[3] After further investigation, Wells Fargo has determined that while Wells Fargo Mortgage Backed Securities Trust 2006-AR3 contains loans originated with the assistance of American Home, Wells Fargo did not purchase these loans from American Home pursuant to the contract containing the indemnity agreement.

[4] Wells Fargo Funding, Inc. purchased the loans from American Home and then transferred the loans and the attendant contractual rights to Defendant Wells Fargo Bank, N.A., which stands in the shoes of Wells Fargo Funding pursuant to the agreement. (*See* Manley Decl. ¶ 4 & Ex. 1 thereto at § 24 (p. 53).)

based on or grounded upon, or resulting from, a breach of the Seller's representations and warranties contained in this Section 7.

(*Id.* Ex. 1 § 7.03 (p. 34) (emphasis added).)

Wells Fargo thus has a contractual right to payment, *right now*, of defense costs and attorneys' fees from American Home. Indeed, Wells Fargo has submitted a proof of claim in the *American Home* bankruptcy case – a proof of claim that relates specifically to this case. (*See* Rutten Decl. Ex 1.) Contrary to Plaintiff's suggestion, Wells Fargo does not need to file a separate lawsuit once the instant lawsuit is over to recover on its indemnity claim; that claim will be resolved by the federal bankruptcy court in the ordinary course of the bankruptcy case.

## III. ANALYSIS

**A.  The Court Has Bankruptcy "Related To" Jurisdiction Over This Action.**

**1.  This Action Satisfies the Standard for Bankruptcy "Related To" Jurisdiction.**

Plaintiff states in its motion that the Ninth Circuit's decision in *In re Fietz*, 852 F.2d 455 (9th Cir. 1988), supplies the applicable "test" for assessing bankruptcy "related to" jurisdiction. (*See* Mot. to Remand at 5.)[5] Plaintiff all but acknowledges that that test is extremely lenient – simply asking whether "the outcome of the [case] *could conceivably* have *any* effect on the estate being administered in bankruptcy":

> [T]he proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome *could* alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which *in any way* impacts upon the handling and administration of the bankruptcy estate.

*Fietz*, 852 F.2d at 457 (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984), *overruled on other grounds by Things Remembered, Inc. v. Petrarca*, 516 U.S. 124 (1995)). The Ninth Circuit deliberately adopted an easily satisfied test because, as Congress recognized when enacting 28 U.S.C. § 1334 (the bankruptcy "related to" jurisdictional statute), expansive federal

---

[5] Plaintiff does not advocate an alternative test, known as the "close nexus" test, that is sometimes used. Notably, however, even that more stringent test is satisfied here. *See Stichting*, 2010 WL 5559973, at *4-6 (finding "related to" jurisdiction under the "close nexus" test because the defendants had contractual rights of indemnity against American Home and would not need to file a separate lawsuit to enforce those rights).

jurisdiction is necessary to facilitate the "efficient and expeditious resolution of all matters connected to the bankruptcy estate." *Fietz*, 852 F.2d at 457.

Courts within the Ninth Circuit consistently hold that a defendant's indemnity right against a bankrupt debtor establishes "related to" jurisdiction under this broad test. *See In re Sizzler Restaurant Int'l, Inc.*, 262 B.R. 811, 818 (C.D. Cal. 2001) (noting that courts applying the "any conceivable effect" test "have routinely found suits between non-debtors to be related to the bankruptcy, where the debtor is contractually obligated to indemnify the non-debtor defendant"); *Hendricks v. Detroit Diesel Corp.*, 2009 WL 4282812, at *4 (N.D. Cal. Nov. 25, 2009) ("Several courts have held that a case is 'related to' a bankruptcy action where . . . there is an indemnification agreement between the defendant in the case and the bankruptcy debtor."); *Carpenters*, 299 B.R. at 613 (holding that a contractual indemnity right establishes "related to" jurisdiction); *Pacific Life Ins. Co. v. J.P. Morgan Chase & Co.*, 2003 WL 22025158, at *1 (C.D. Cal. June 30, 2003) (same); *In re Washington Mut., Inc. Sec., Derivative & ERISA Litig.*, 2009 WL 3711614, at *2 (W.D. Wash. Nov. 2, 2009) (same).[6]

Plaintiff attempts to heighten the minimal showing required by the "any conceivable effect" test Plaintiff concedes applies here by contending that Wells Fargo's indemnity right is too "remote" to create jurisdiction. Plaintiff, relying solely on decisions from courts in the Third Circuit, contends that Wells Fargo's indemnity rights do not trigger "related to" jurisdiction because Wells Fargo would have to "bring an entirely separate proceeding" to enforce those rights. (Mot. to Remand at 6.) Plaintiff's argument is both legally and factually meritless.

Plaintiff's argument is *legally* meritless because, regardless of how it might be viewed in the Third Circuit, the Ninth Circuit already has rejected it. When the Ninth Circuit adopted its

---

[6] *See also In re Dow Corning Corp.*, 86 F.3d 482, 494 (6th Cir. 1996) (holding that equitable claims of contribution and indemnification are sufficient to invoke "related to" jurisdiction); *Senorx, Inc. v. Coudert Bros. LLP*, 2007 WL 1520966, at *2 (N.D. Cal. May 24, 2007) (holding that claims against individual partners "related to" their firm's bankruptcy because a "holding of liability will likely give rise to indemnity claims by the partners against the bankruptcy estate"); *Williams v. Shell Oil Co.*, 169 B.R. 684, 690 (S.D. Cal. 1994) (finding a case "related to" a bankruptcy case because a contract to apportion the settlement or judgment between the debtor and former co-defendants meant that the defendants "will conceivably become [a] contract creditor[] of the[] estate").

1   "any conceivable effect" test, it specifically rejected a test that could "deny jurisdiction in cases
2   where the dispute is 'conceivably' related to the bankruptcy estate, but that relationship is
3   remote." *Fietz*, 852 F.2d at 457; *accord Hendricks*, 2009 WL 4282812, at *6 (rejecting the
4   argument that an indemnification agreement must have a "quantitative" or "material effect" on a
5   bankruptcy proceeding). Further, in the Ninth Circuit, courts do not require some sort of
6   automatic or contractual indemnity, as Plaintiff suggests. *See Sizzler*, 262 B.R. at 819 n.5
7   (rejecting "a reading of [Third Circuit law] which requires an unconditional indemnification
8   agreement or otherwise automatic liability on the part of the debtor"); *Pacific Life*, 2003 WL
9   22025158, at *1 (holding that a defendant need not have a "guaranteed indemnification" claim
10  against the debtor to remove a case); *Washington Mut.*, 2009 WL 3711614, at *1 (holding that the
11  indemnity right "need not arise out of an unconditional contractual agreement").

12  Plaintiff's argument is *factually* meritless because, in any event, Wells Fargo *does* have
13  automatic and contractual indemnity rights, such that there is no need to file another lawsuit to
14  enforce them. Plaintiff apparently is under the misapprehension that Wells Fargo has only
15  *equitable* indemnity rights, such that if it is found liable in this action, it would have to file a
16  lawsuit for indemnity at some future time. Plaintiff simply ignores that Wells Fargo has
17  *contractual* indemnity rights and that Wells Fargo has submitted a proof of claim in the *American*
18  *Home* bankruptcy proceeding that relates specifically to this case and that seeks indemnity on the
19  claims Plaintiff asserts. (*See* Rutten Decl. Ex. 1.) Further, Plaintiff is wrong in contending that
20  Wells Fargo will have to "demonstrate that the liability it incurred [in this action] was based on
21  the few loans that American Home contributed to the trust." (Mot. to Remand at 7.) Wells Fargo
22  has a right to have American Home pay "*in the first instance*, any and all . . . reasonable and
23  necessary legal fees and related costs" stemming from any "claims" – not just any final
24  judgments. (Manley Decl. Ex. 1 § 7.03 (p. 34).)

25  Precisely for these reasons, the court in *Stichting Pensioenfonds ABP v. Countrywide*
26  *Financial Corp.*, 2010 WL 5559973 (C.D. Cal. Dec. 29, 2010), held just last month that "related
27  to" jurisdiction exists over a mortgage-backed securities case in which the defendants have
28  indemnity rights against American Home. The court rested its holding on the fact that the

defendants' indemnity rights are contractual and include the right to payment of "costs incurred in defending [the] lawsuit," such that "American Home's obligation to defend [the defendants] arose immediately upon the filing of [the] lawsuit." *Id.* at *4. The court specifically rejected the argument, echoed by Plaintiff here, that "related to" jurisdiction was lacking on the theory that "[t]o seek indemnity from a bankrupt originator, Wells Fargo will need . . . another litigation" following final judgment. (Mot. to Remand at 7.) As the court put it, "[t]here is . . . no merit to Plaintiff's argument that yet another separate lawsuit would have to proceed – in which [the defendants] get a judgment regarding American Home's indemnification liability – before the bankruptcy case would be impacted." *Stichting*, 2010 WL 5559973, at *4.

The two cases on which Plaintiff relies are readily distinguishable. In each, the Third Circuit addressed not *contractual* indemnity but *equitable* indemnity based on tort contribution principles. *See Pacor*, 743 F.2d at 995; *In re Federal-Mogul Global, Inc.*, 300 F.3d 368, 380-82 (3d Cir. 2002). In fact, *Pacor* expressly distinguished an earlier case finding "related to" jurisdiction based on *contractual* indemnity of the sort Wells Fargo enjoys here. *See Pacor*, 743 F.2d at 995. "*Pacor* specifically notes that contractual indemnity claims can have an effect on a bankruptcy estate and thus provide a basis for the exercise of 'related to' jurisdiction." *Belcufine v. Aloe*, 112 F.3d 633, 636-37 (3d Cir. 1997). Another case Plaintiff cites confirms that "when the right to indemnification is clearly established and accrues upon the filing of [a] civil action" – precisely the situation here – "the proceeding [is] related to the bankruptcy case." *Steel Workers Pension Trust v. Citigroup, Inc.*, 295 B.R. 747, 750 (E.D. Pa. 2003).

Significantly, there have been seven recent cases addressing similar remand motions in mortgage-backed securities cases – including four in this circuit – and all seven have held that a defendant's contractual indemnity right against a bankrupt originator gives rise to "related to" jurisdiction. *See Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 385-87 (5th Cir. 2010); *City of Ann Arbor Employees' Retirement Sys. v. Citigroup Mtg. Loan Trust Inc.*, 572 F. Supp. 2d 314, 315, 318-19 (E.D.N.Y. 2008); *Massachusetts Bricklayers & Masons Trust Funds v. Deutsche Alt-A Sec., Inc.*, 399 B.R. 119, 121-23 (E.D.N.Y. 2009); *FHLB v. Deutsche Bank Sec.*, _ F. Supp. 2d _, 2010 WL 3512503, at *6 (W.D. Wash. Sep. 1, 2010); *FHLB v.

*Barclays Capital, Inc.*, 2010 WL 3662345, at *5-6 (W.D. Wash. Sep. 1, 2010); *FHLB v. Deutsche Bank Sec.*, 2010 WL 5394742, at *14 (N.D. Cal. Dec. 20, 2010); *Stichting*, 2010 WL 5559973.[7] The same result follows here; the Court clearly has "related to" jurisdiction over this action.

### 2. Plaintiff's Post-Removal Attempt to Excise American Home Loans From This Case Does Not Affect the Court's Jurisdiction.

Plaintiff's attempt to evade this Court's jurisdiction by representing that it somehow will carve out the American Home loans from the case fails legally and factually. Legally, it is black letter law that courts must analyze subject-matter jurisdiction based on the case as it existed at the time of removal, *see Sparta Surgical Corp. v. NASD*, 159 F.3d 1209, 1213 (9th Cir. 1998), and this principle applies with full force to bankruptcy "related to" jurisdiction. *See Carpenters*, 299 B.R. at 613; *see also In re Bissonnet Invs. LLC*, 320 F.3d 520, 525 (5th Cir. 2003). The Amended Complaint at the time of removal alleged that all originators, without differentiation, failed to follow the described underwriting guidelines and origination practices, and the Amended Complaint at the time of removal therefore triggered American Home's indemnity agreement with Wells Fargo. Plaintiff now claims that its repeated, blanket references in the Amended Complaint to "originators" and "mortgage loans" should be read as "originators, except for the bankrupt originators on which this case could be removed" and "mortgage loans, except for the loans originated by bankrupt entities on which this case could be removed." Plaintiff cannot evade removal jurisdiction with such post-removal *ipse dixits*.

Factually, because the Amended Complaint contains multiple statistics-based claims regarding the entire pool of loans, the loans originated by American Home are irremediably bound up in Plaintiff's allegations. Plaintiff alleges, for example, that the offering documents contained misleading statements because the credit ratings were inaccurate. These ratings, however, depend on the characteristics of all the loans within a pool, and therefore necessarily implicate the loans originated by American Home. Similarly, the allegedly misleading statements about loan-to-value ratios contain aggregate percentages for the entire pool, and therefore also

---

[7] The courts in the three *FHLB* cases remanded the cases on equitable grounds, but only after holding that removal was *proper* because the cases were related to bankruptcy proceedings.

necessarily include the loans originated by American Home. (*See* Am. Compl., Schedule 26 (Item 66).) Likewise, the supposed factual basis for all of Plaintiff's allegations – post-hoc statistics generated by examining all the loans within the pools – necessarily includes loans originated by American Home. (*See, e.g. id.* at Items 76, 79, 110, and 120.) Plaintiff's commitment to excise American Home loans from the scope of this case may have profound implications for the sufficiency of its statistics-based complaint at the pleading stage, but such a post-removal commitment cannot divest this Court of jurisdiction.

### 3. Section 22(a) of the Securities Act of 1933 Does Not Affect Bankruptcy "Related To" Jurisdiction.

Plaintiff's argument that § 22(a) of the 1933 Act prohibits removal of this case is meritless because § 22(a) does not affect bankruptcy "related to" jurisdiction. Plaintiff would have the Court hold that if 1933 Act claims are asserted in state court, they must stay there even if they are related to, and would have an impact on, federal bankruptcy proceedings. Plaintiff's argument must be rejected because it would subvert the federal bankruptcy regime, which is designed "to grant comprehensive jurisdiction . . . so that [federal courts] might deal efficiently and expeditiously with *all matters* connected with the bankruptcy estate." *Celotex Corp. v. Edwards*, 514 U.S. 300, 307-08 & n.5 (1995).

In fact, in *CalPERS v. WorldCom, Inc.*, 368 F.3d 86 (2d Cir. 2004), the Second Circuit rejected Plaintiff's precise argument, concluding that "Section 1452 [the bankruptcy 'related to' removal statute] applies with *full force* to claims under the [1933] Act." *Id.* at 104. The Second Circuit explained:

> Section 1452(a) is designed to further Congress's purpose of centralizing bankruptcy litigation in a federal forum. Were Section 22(a) construed to trump Section 1452(a), Section 22(a) could interfere with the operation of the Bankruptcy Code . . . . Because, in any given case, the full amount of damages sought under the 1933 Act can be the basis for a claim [for indemnity] against the estate, the policy underlying Section 1452(a) applies with full force to claims under the Act. Section 1452(a) dictates that these claims, when they are brought against defendants with contribution rights, should not be subject to conflicting outcomes along with repetitive and time-consuming discovery proceedings in multiple state courts.

*Id.* at 103-04 (internal citations omitted).

Plaintiff never explains how it could make sense to relegate federal 1933 Act claims affecting bankruptcy estates to state court when all other claims affecting bankruptcy estates – including purely state law claims – can be removed to federal court. Plaintiff instead floats a technical "specific versus the general" argument to contend that "the very specific anti-removal provision of the 1933 Act takes precedence over more general removal provisions like Section 1452." (Mot. to Remand at 10.) Plaintiff's argument on this point was rejected by the Second Circuit because "Section 22(a) . . . cannot be considered more 'specific' than Section 1452(a)":

> [W]e cannot conclude that Section 22(a) is more "specific" than Section 1452(a). . . . [T]he class of claims covered by Section 22(a) is no more specific than the class of claims covered by Section 1452(a). . . . Section 22(a) does not cover only a subset of the universe of claims that are "related to" a bankruptcy case; rather, it applies to numerous claims that are in no way "related to" a bankruptcy, just as Section 1452(a) applies to numerous claims that are not brought under the 1933 Act. . . . [B]ecause Section 22(a) does not cover a narrower class of claims than Section 1452(a), it cannot be considered more "specific" than Section 1452(a).

*CalPERS*, 368 F.3d at 102-04.

Plaintiff, citing district court cases from Tennessee and Alabama, nevertheless argues that "courts in other circuits have held that Section 22(a) prohibits removal under Section 1452(a)." (Mot. to Remand at 11.) Plaintiff neglects to mention that courts in the *Ninth* Circuit consistently hold the opposite, concluding that "[the] argument . . . that section 22(a) is more specific than section 1452[] is not persuasive," *Carpenters*, 299 B.R. at 614-15, and that where "removal [is] . . . based on . . . 'related to' jurisdiction under section 1452 . . . . removal [is] not barred by section 22(a)." *Pacific Life*, 2003 WL 22025158, at *2; *accord Lone Star*, 594 F.3d at 386-87 (upholding removal of 1933 Act claims based on "related to" jurisdiction); *Stichting*, 2010 WL 5559973 (same).[8]

---

[8] The two cases Plaintiff cites (*see* Mot. to Remand at 6), do not help its cause in any event. *City of Birmingham Retirement & Relief Fund v. Citigroup, Inc.*, 2003 WL 22697225, at *2 (N.D. Ala. Aug. 12, 2003), lamented the lack of appellate guidance on this issue – a void that subsequently was filled by the Second Circuit's decision in *CalPERS*. *Tennessee Consolidated Retirement System v. Citigroup, Inc.*, 2003 WL 22190841, at *3 (M.D. Tenn. May 9, 2003), likewise noted that it was venturing into uncharted territory, and rested its decision in part on the unique anti-removal policy considerations applicable when a *public* retirement system sues in the courts of its own state – considerations that do not apply in the instant suit by a private Delaware company suing to obtain a recovery for its Nevada affiliate.

Plaintiff simply ignores these on-point cases, and instead cites *Luther v. Countrywide Home Loans Servicing LP*, 533 F.3d 1031 (9th Cir. 2008), which held that § 22(a) controlled over the more general removal provisions of the Class Action Fairness Act ("CAFA"). Plaintiff strains to apply *Luther*'s reasoning to § 1452, but it does not fit; CAFA is a broad statute that "applies to a generalized spectrum of class actions," *id.* at 1034, whereas § 1452 is part of a reticulated statutory scheme governing an exclusively federal subject matter – cases affecting bankruptcy estates. Plaintiff does not cite a single case in the Ninth Circuit that has ever applied *Luther* or its reasoning to § 1452. Indeed, the one case Wells Fargo is aware of *rejected* Schwab's argument and concluded that "the Ninth Circuit's decision in *Luther* is of little relevance . . . where the issue is whether section 22(a) trumps the Court's related-to bankruptcy jurisdiction," and held that § 22(a) does not negate "related to" jurisdiction. *FHLB v. Deutsche Bank Sec.*, 2010 WL 5394742, at *6.

Under Plaintiff's view, no case filed under the federal 1933 Act could be removed to federal court no matter how closely it is related to a federal bankruptcy proceeding, and no matter how substantially it might affect a bankruptcy proceeding. That is not the law.

**B.     The Equities Favor Exercising Jurisdiction.**

Because Plaintiff cannot credibly dispute that this Court has "related to" jurisdiction, Plaintiff asks the Court to remand on equitable grounds. The equities, however, support the Court exercising its removal jurisdiction.

Courts consider the following factors in determining the appropriate balance of the equities for "related to" jurisdiction:

> (1) the effect of the action on the administration of the bankruptcy estate; (2) the extent to which issues of state law predominate and the difficulty of applicable state law; (3) comity; (4) the relatedness or remoteness of the action to the bankruptcy case; (5) the right to a jury trial; and (6) prejudice to the party involuntarily removed from state court.

*Washington Mut.*, 2009 WL 3711614, at *3.

Plaintiff argues that because only one of the 36 offerings at issue contains loans originated by American Home, and because that one offering contains so few of those loans, this case would have an insufficient effect on and is too remote from the bankruptcy estate. Plaintiff focuses,

however, on the wrong number: Between the significant value of the certificate Plaintiff purchased and the attorneys' fees this case has and will generate, Wells Fargo's indemnity claim against American Home could be substantial. With respect to Plaintiff's promise to excise the American Home loans from this case, as noted, it is not clear how Plaintiff plans to do that given that its Amended Complaint is premised almost entirely on statistical analyses that include the American Home loans.

In addition, several of the factors counsel against an equitable remand. While Plaintiff contends that the state law claims "predominate," Plaintiff alleges federal securities laws claims alongside the state claims. Furthermore, there are no comity concerns favoring remand. Finally, removal does not affect Plaintiff's right to a jury trial because a jury trial is available regardless of the court in which the case is pending. *See* 28 U.S.C. § 157(e) (jury trial permitted in bankruptcy court where otherwise available); Fed. R. Civ. P. 38(a) (jury trial permitted in district court).

## IV. CONCLUSION

For the reasons stated above, this Court has removal jurisdiction over this action on "related to" grounds, and Plaintiff's Motion to Remand should be denied.

DATED: January 14, 2011                MUNGER, TOLLES & OLSON LLP

                                       By:      /s/ James C. Rutten
                                                   James C. Rutten

                                       Attorneys for Defendants WELLS FARGO BANK, N.A. and WELLS FARGO ASSET SECURITIES CORPORATION